G-1



**STOEL RIVES LLP**
ATTORNEYS AT LAW

600 University Street, Suite 3600
Seattle, Washington 98101
main 206.624.0900
fax 206.386.7500
www.stoel.com

BART W. REED
*Direct (206) 386-7568*
bwreed@stoel.com

June 21, 2013

**BY EMAIL and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Matthew Sweeney, Esq.
P&U Capital Partners I, L.L.C.
c/o Prium Companies, L.L.C.
820 A Street, Suite 300
Tacoma, Washington 98402

Re: Prium Orchard Hills, L.L.C.;
 Orchard Hills Apartments, 501 Orchard Street West
 Tacoma, Pierce County, Washington 98467 (the "Property");
 **Demand for Compliance with Operating Agreement, including**
 **Continuing Maintenance Obligations, Site Access and Property Documents**

Dear Mr. Sweeney:

We offer this letter as a reply to your most recent May 28, 2013 correspondence on behalf of Prium Orchard Hills, LLC ("Prium") and in further support of the previous May 10, 2013 demand letter from our clients, Nationwide Affordable Housing Fund 30, LLC and SCDC, LLC (the "Investor Members"). While we intend to respond to your client's contentions in greater detail below, the Investor Members generally find Prium's positions reflected in your recent correspondence short-sighted, misplaced and unwarranted—particularly regarding Prium's (i) blanket assertion that the Investor Members allegedly "failed to perform adequate due diligence prior to assuming the position of the predecessor Investor Member" and (ii) continued reliance on and deference to The Allied Group ("Allied")[1] relative to the previous and ongoing operation and maintenance of the Property. Such positions overlook and remain inconsistent with the unambiguous terms of the Operating Agreement to which Prium, not Allied (or its successor), remains bound.

---

[1] Interestingly, and presumably as a consequence of concerns regarding the propriety of Allied's management of the Property, it now appears from recent correspondence received by our client that Prium has chosen to replace Allied with another property management company, Hoban & Associates, Inc. d/b/a Coast Real Estate Services ("Coast Services").



FILE COPY

Alaska California Idaho
Minnesota Oregon Utah Washington
and Washington, D.C.

Certified Article Number
7160 3901 9845 2895 9877
SENDERS RECORD

73994541.1 0064625-00001



Matthew Sweeney
June 21, 2013
Page 2

## MISAPPROPRIATION OF TENANT SECURITY DEPOSITS

First and foremost, and as detailed in our May 10, 2013 correspondence, Prium remains in violation of the Washington Residential Landlord-Tenant Act (RCW 59.18.270) and, thus, the Operating Agreement (Sections 6.1, 6.5, 6.6 and 7.2) for failing to safeguard and secure, in a separate account, tenant security deposits in the approximate amount of $87,000.00. Again, Prium's reliance on and deference to Allied for the handling, oversight and control of the account ignores the obligation on the part of Prium, as the General Partner, to ensure that the account is properly established and maintained, notwithstanding any delegation of such responsibilities to third parties.

Accordingly, the Investor Members demand that, within seven (7) days of the date of this correspondence, Prium exacts all appropriate measures to reconcile the tenant security deposit amounts and supplement the account with funds sufficient to bring the account current and compliant with Washington law. In addition, the Investor Members demand that Prium provide an account summary substantiating that the account complies with any and all legal requirements, and regularly updates the Investor Members with security deposit account information and balances. Whether and to what extent the Investor Members, or any predecessor investor member(s), neglected to raise any issue with the security deposit account until this time has absolutely no bearing on Prium's continuing duty to maintain the account in compliance with the applicable law and the Operating Agreement's terms.

## FAILURE TO MAINTAIN THE PROPERTY

With respect to the property maintenance issues, the Investor Members are quite concerned, if not frustrated, by the fact that Prium places such little significance on the "immediate needs" identified in the 2012 Physical Needs Assessment (the "2012 PNA"). As you have been apprised, the "immediate need" items in the 2012 PNA include potentially serious conditions impacting the Property and those individuals residing or working at the Property. Indeed, the defective or deficient items span a broad array of conditions and specifically concern or relate to, among other items, (i) the structure and envelope, (ii) the mechanical, electrical and plumbing systems and components and (iii) the life safety/fire protection elements of the Property. Prium's continued failure or otherwise refusal to recognize and appreciate these issues—and to rectify them via usage of funds from the replacement reserve and, thereafter, the Operating Deficit Guarantee amounts—constitutes a material breach of the Operating Agreement (namely, Sections 6.5(A), 6.6(5)(6) and (7)).

73994541.1 0064625-00001



Matthew Sweeney
June 21, 2013
Page 3

In its most recent responsive correspondence, Prium contends that the Investor Members may have waived any right to demand that Prium address these Property maintenance issues and "immediate need" items purportedly based on some neglect on the part of the Investor Members to account for such items during the acquisition of the predecessor Investor Member. However, this notion is belied by the fact that the same "immediate needs" uncovered and noted in an earlier 2006 Physical Needs Assessment (the "2006 PNA") are, in large part, precisely the same "immediate need" items that existed as of the investigations and reporting of the Property conditions during the 2012 PNA. Together with the fact that the Investor Members have received very little, if any, reasonable assurances from Prium that the "immediate needs" and other defective or deficient Property conditions will be corrected, the Investor Members now have every right to make such demands under the Operating Agreement that the items be promptly and properly addressed in order to ensure not only the good working order, operation and maintenance of the Property, but also, and perhaps more germane to the Investor Members, its future financial viability and success.

Rather than stand accountable for its actions or omissions relative to the Property conditions and appropriate clear systematic steps to correct the Property's "immediate needs" in furtherance of its contractual obligations, Prium has chosen a far more dubious path, electing to defer, once again, to Allied for its operation and maintenance responsibilities. Here, Prium states in its letter that "Allied is the on-site manager of the property and we trust them to ensure that the premises are reasonably safe and secure." In this regard, the Investor Members would be quite interested to learn what, if any, requests were made by Prium to Allied to correct all or a portion of the " immediate need" items referenced in the 2006 PNA or 2012 PNA. Now, since Allied apparently has been replaced with Coast Services, the Investors Members are equally interested to know what efforts, if any, are being made to direct or coordinate with Coast Services regarding the remediation of the "immediate need" items. In any event, and regardless of what management company has been retained by Prium, the Investor Members demand that Prium exact measures and devote the necessary resources sufficient to ensure that these items are addressed and resolved in a timely and proper manner.

Next, Prium confirms in its letter that it is "reasonably satisfied" with the "immediate property condition" based on "periodic inspections by the Washington State Housing Finance Commission" (the "WSFHC"). Prium attaches its letter various inspection reports produced by the WSFHC during the 2008 and 2011 time periods. However, after reviewing these inspection reports, it appears that the WSFHC, in its inspections, was merely concerned with general habitability issues and not with the operation, maintenance and construction-related issues impacting the revenue and profitability of the Property and affecting the interests of the Investor Members. Also, we seriously question whether and to what extent the WSHFC had any desire,



Matthew Sweeney
June 21, 2013
Page 4

much less the available resources and wherewithal, to conduct as comprehensive of physical needs reports as those detailed in the 2006 and 2012 PNAs. In fact, the Investor Members cannot locate in any of the WSHFC reports any mention of the systemic "immediate needs" conditions pervading the Property, such as the polybutylene pipe issues.

With respect to the polybutylene pipe issue, Prium contends, quite defiantly, in its letter that the "plastic pipe is not and has never been an immediate need." Further, Prium asserts that "[t]he issue was recognized by all parties years ago at the inception of [Prium's] involvement" and "[a] reserve fund exists and is funded with dedicated monthly contributions so that funds are available to replace the piping over time on an as needed basis." Here, the Investor Members request that Prium immediately furnish information and documents to demonstrate what reserve funds have been established to address the polybutylene pipe concerns, what monthly contributions have been made to the reserve and, of those funds, what monies have been expended to date. Moreover, as Prium has also stated that "Allied has been mostly responsible for performing unit refurbishing, including replacing pipes in units when needed," the Investor Members additionally request that Prium provide information relative to the timing, location, cause, repair process and current status of any pipe replacements made by Allied or any others on the Property.

The mere fact that the pipes have not experienced any widespread failure to date provides little, if any, comfort to the Investor Members that such pipes, or the other "immediate needs," could not impact the Property now or in the near future based on the conditions identified in the 2012 PNA. Moreover, simply because the pipes have yet to cause loss or damage to the Property does not relieve Prium from its ongoing responsibility to maintain the Property, which includes addressing and resolving conditions that impinge on the operation and economic sustainability and livelihood of the Property asset.

Notwithstanding Prium's continuing obligation to operate and maintain the Property in accordance with the terms of the Operating Agreement, which includes the resolution of the "immediate need" items identified in the 2012 PNA, the Investor Members desire to inspect the Property in the near future and to solicit the services of a third party inspection consultant for purposes of rendering another independent review or physical needs assessment to determine what "immediate needs" items remain from the latest 2012 PNA, which should shed light on what, if any, substantive corrective work Prium has performed to address and resolve the ongoing maintenance issues.



Matthew Sweeney
June 21, 2013
Page 5

**RECORDS AVAILABILITY**

In connection with the Investor Member's requests for documents, we ask that you provide, or make available to us, any and all documents responsive or relating to the issues reflected in the instant letter, including the tenant security deposit accounting summaries and information, as well as the Property operation and maintenance concerns. Beyond those documents, the Investor Members seek the production of documents related to Prium's internal correspondence bearing on its decision-making process to address or forego addressing the "immediate need" items contained in the 2012 PNA and all documents and correspondence bearing on its relationship with Allied (and, now, Coast Services) regarding those operation and maintenance responsibilities and concerns. While we would prefer to review these items in advance of any Property site visit, the Investor Members can certainly review the items at the Property upon their site visit, which they intend to make in the coming weeks.

To this end, as it may be purposeful to discuss this matter to coordinate the Investor Members' and any inspector's prospective site visit and document review, please contact me at your earliest convenience. In addition, the Investor Members remain mindful of the present status of the Property and Prium's role and responsibilities relative to same. And, accordingly, the Investor Members will likely seek the opportunity to meet with Prium representatives after the Investor Members have reviewed the matter and assessed the current condition of the Property.

Based on the foregoing, we look forward to hearing back from you soon to discuss a clear and straightforward path that promotes and ensures the future viability and success of the Property.

Yours very truly,

*[signature]*
Bart W. Reed

BWR/lb

cc:   Wentwood Capital Advisors, L.P.

73994541.1 0064625-00001

| 2. Article Number | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>7160 3901 9845 2895 9877 | A. Received by (Please Print Clearly)<br>A. L. Mel | B. Date of Delivery<br>6/28/13 |
| | C. Signature<br>X  G LoMpa | ☒ Agent<br>☐ Addressee |
| | D. Is delivery address different from item 1?<br>If YES, enter delivery address below: | ☐ Yes<br>☐ No |
| 3. Service Type   CERTIFIED MAIL | | |
| 4. Restricted Delivery? (Extra Fee)   ☐ Yes | | |
| 1. Article Addressed to:<br><br>Matthew Sweeney, Esq.<br>P&U Capital Partners I, L.L.C.<br>c/o Prium Companies, L.L.C.<br>820 A Street, Suite 300<br>Tacoma, Washington 98402 | Reference Information<br><br>0064625-00001<br><br>Bart Reed | |

PS Form 3811, January 2005       Domestic Return Receipt

**CERTIFIED MAIL**

7160 3901 9845 2895 9877

RETURN RECEIPT REQUESTED

---

**STOEL RIVES LLP**
ATTORNEYS AT LAW

600 University Street, Suite 3600
Seattle, Washington 98101

Bart Reed

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Matthew Sweeney, Esq.
P&L Capital Partners I, L.L.C.
c/o Prium Companies, L.L.C.
820 A Street, Suite 300
Tacoma, Washington 98402

RETURN RECEIPT REQUESTED

RECEIVED
JUN 28 2013
Stoel Rives LLP

PRIU820  98402025-1512       06/26/13
FORWARD TIME EXP RTN TO SEND
:PRIUM TACOMA BUILDING
6416 PACIFIC HWY E
FIFE WA 98424-1561

**RETURN TO SENDER**

---

C

RETURN RECEIPT REQUESTED
USPS MAIL CARRIER
DETACH ALONG PERFORATION

Thank you for using Return Receipt Service

Thank you for using Return Receipt Service